UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AGSTAR FINANCIAL SERVICES, FLCA, and AGSTAR FINANCIAL SERVICES, PCA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   CAUSE NO.: 1:09-CV-272-TS ) |
| ROCK CREEK DAIRY LEASING, LLC, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Partial Summary Judgment [DE 77], filed by Plaintiffs AgStar Financial Services, FLCA, and AgStar Financial Services, PCA (the "Plaintiffs").

**BACKGROUND**

The Plaintiffs are federal instrumentalities chartered under the Farm Credit Act as a Federal Credit Association (FLCA) and a Production Credit Association (PCA). Their principal places of business are in Minnesota. On October 1, 2009, the Plaintiffs initiated this action to foreclose on mortgages that Defendant Rock Creek Dairy Leasing, LLC ("Rock Creek") had executed and delivered to them to secure various notes that had been executed for the purpose of purchasing and expanding a dairy farm in Wells County, Indiana. (Pls.' Verified Compl., DE 1.) The Plaintiffs allege that the Defendants have violated the terms and conditions of the applicable loan documents. Therefore, they claim a right to foreclose on all interests in the mortgaged premises, to take judgment against several of the Defendants for the balance due on the notes, and to obtain a permanent order of possession over the collateral that secured the notes. The

Plaintiffs also requested that a receiver be appointed to manage and maintain the property, take control over assets, collect any income from the property, market the property for lease or sale, and maximize the value of the property and dispose of assets for the benefit of the Plaintiffs and other creditors. On October 7, the Court entered an Order Appointing Receiver [DE 26].

The following Defendants, who were named in the Complaint because they have or may claim some right, title, or interest in the mortgaged premises or collateralized property, have defaulted in this case by failing to answer the Complaint or otherwise defend: Vet Pharm, Inc.; Paragon Construction Company of Fort Wayne a/k/a Paragon Construction Co. a/k/a S&S Construction; Red Iron Construction, Inc.; and HD Supply White Cap Construction Supply. (Clerk's Entry of Default, DE 71.) National City was not named as a Defendant in the Complaint, but has been allowed to intervene as a Defendant in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2) to assert a priority interest in certain assets.

On December 11, the Plaintiffs filed a Motion for Partial Summary Judgment requesting summary judgment on all counts against all Defendants except for those related to the interests of Intervenor Defendant National City in certain cattle, the interest of Defendant Deer & Company in certain farm tractor equipment, and their breach of contract claim against Defendant Vreba-Hoff Dairy Development, LLC. The Plaintiffs assert that the Defendants are unable to show specific material facts that challenge the Plaintiffs' first priority, perfected interest in the mortgaged premises or the defaults under the loan documents, and that they are entitled to judgment as a matter of law. In connection with the Plaintiffs' Motion, the Plaintiffs and Defendant Deere & Company have filed a Stipulation [DE 84] recognizing Defendant Deere's first priority, perfected purchase money security interest in various pieces of Deere & Company

implements and equipment. No other Defendant has responded to or otherwise opposed the Motion for Partial Summary Judgment.

**FINDINGS OF FACTS**

**A.      The Loan Documents**

On or about November 30, 2006, Midwest Dairy Investments, LLC ("Midwest") and Rock Creek executed and delivered to Plaintiff Agstar Financial Services, FLCA (FLCA) a Promissory Note/Loan Agreement in the principal amount of $6,975,000 (the "Rock Creek FLCA Note"), in which Midwest and Rock Creek agreed to be jointly and severally liable for the indebtedness evidenced by the Rock Creek FLCA Note, together with interest on the unpaid principal balance until paid in full. (Aff. of Godfrey ¶ 6, DE 5; Verified Compl. ¶ 20 & Ex. B, DE 1; Answer of Defendants Rock Creek, Midwest, and Vreba-Hoff Dairy Development ("Vreba-Hoff") ¶ 20, DE 60.) Additionally, on or about November 30, 2006, Rock Creek Dairy, LLC (RCD) and Vreba-Hoff executed and delivered to Agstar Financial Services, PCA (PCA) a Promissory Note/Loan Agreement in the principal amount of $3,037,000 (the "Rock Creek PCA Note," and together with the Rock Creek FLCA Note, the "Notes"), in which RCD and Vreba-Hoff agreed to be jointly and severally liable on the full amount due under the Rock Creek PCA Note, together with interest on the unpaid principal balance until paid in full. (Aff. of Godfrey ¶ 13; Compl. ¶ 30 & Ex. C; Rock Creek Answer ¶ 30.) On January 9, 2008, the Rock Creek PCA Note was assumed by Rock Creek and Midwest, and RCD was released from any liability in respect to that Note. (Aff. of Godfrey ¶ 16; Compl. ¶ 35; Rock Creek Answer ¶ 35.) However, Vreba-Hoff retained its liability as a maker of the Rock Creek PCA Note. (*Id.*)

To secure payment of the obligations evidenced by the Rock Creek FLCA Note, on or about November 30, 2006, Rock Creek executed and delivered to FLCA an Open-End Mortgage (the "First Rock Creek Mortgage") securing the real properties commonly known as 9075 S 250 E, City of Keystone, County of Wells, Indiana 46759 (the "Mortgaged Premises"). (Aff. of Godfrey ¶ 21; Compl. ¶¶ 41–42 & Ex. D; Rock Creek Answer ¶¶ 41–42.) The First Rock Creek Mortgage was recorded on December 4, 2006, with the Wells County Recorder as Instrument No. 153706, Book 127, Page 830. (Compl. ¶ 43 & Ex. D.) To additionally secure the payment of the obligations evidenced by the Rock Creek FLCA Note, Rock Creek executed and delivered to FLCA a Manure Easement (the "Rock Creek Easement"). (Aff. of Godfrey ¶ 22; Compl. ¶¶ 44–45 & Ex. F; Rock Creek Answer ¶¶ 44–45.) On December 4, 2006, the Rock Creek Easement was recorded with the Wells County Recorder as Instrument No. 153707, Miscellaneous Book 66, Page 494. (Compl. ¶ 46 & Ex. F.)

On or about June 17, 2008, in order to secure payment of the obligations evidenced by the Rock Creek PCA Note, RCD executed and delivered to PCA an Open-End Mortgage (the "Second Rock Creek Mortgage") securing the Mortgaged Premises. (Aff. of Godfrey ¶ 23; Compl. ¶ 47, Ex. E.) On June 30, 2008, the Second Rock Creek Mortgage was recorded with the Wells County Recorder as Instrument No. 000318960006, Book 130, Page 366. (Compl. ¶ 48 & Ex. E.) On July 24, 2008, in order to secure its obligations under the assumed Rock Creek PCA Note, Rock Creek executed and delivered to PCA an Amended and Restated Open-End Mortgage (the "Amended Second Rock Creek Mortgage," and together with the First Rock Creek Mortgage and the Second Rock Creek Mortgage, the "Mortgages") securing the Mortgaged Premises. (Aff. of Godfrey ¶ 24; Compl. ¶ 49 & Ex. E; Rock Creek Answer ¶ 49.)

On September 18, 2008, the Amended Second Rock Creek Mortgage was recorded with the Wells County Recorder as Instrument No. 000330250007, Book 130, Page 366. (Compl. ¶ 50 & Ex E.) Each of the Mortgages provides that the nonpayment or nonperformance of any of the obligations under the Mortgages and/or the Notes shall constitute an Event of Default, which will entitle the Plaintiffs to foreclose upon the Mortgages.[1] (*See* Compl. Exs. D & E.)

On or about November 30, 2006, to further secure the amounts due and owing under the Rock Creek FLCA Note, Rock Creek delivered to FLCA a Security Agreement (the "First Rock Creek Security Agreement"), which granted FLCA a security interest in collateral that was described in the First Rock Creek Security Agreement. (Aff. of Godfrey ¶ 26; Compl. ¶ 52 and Ex. G.) The listed collateral included harvested and processed crops, livestock and poultry, feed, seed, fertilizer, herbicides, and other agricultural chemicals and supplies, general intangibles, equipment and spare parts and special tools, motor vehicles, fixtures, contract rights, and milk and accounts from milk sales. Also on or about November 30, 2006, to further secure the amounts due and owing under the Rock Creek PCA Note, Rock Creek delivered to PCA a Security Agreement (the "Second Rock Creek Security Agreement," and together with the First Rock Creek Security Agreement, the "Rock Creek Security Agreements"), which granted PCA a security interest in the collateral described in the Second Rock Creek Security Agreement. (Aff. of Godfrey ¶ 27; Compl. ¶ 53 & Ex. G.) On December 6, 2006, pursuant to the Rock Creek Security Agreements, the Plaintiffs filed two UCC-1 Financing Statements with the Indiana

---

[1] The following was specified in each of the Notes as an Event of Default and Acceleration: "Nonpayment or nonperformance of any of the obligations secured hereby or of any covenant under this Mortgage." (Compl. Exs. D & E at 3.) The Notes further provided that "[u]pon any default, the entire indebtedness secured hereby shall become immediately due and payable at the option of the Mortgagee, without notice, and this Mortgage may be foreclosed accordingly." (*Id.*)

Secretary of State as Document Nos. 200600011365872 and 200600011365983 (the "Financing Statements"). (Aff. of Godfrey ¶ 29; Compl. ¶¶ 55–58 & Ex. H.) On July 17, 2008, PCA filed an amendment to the UCC-1 Financing Statement in its favor with the Indiana Secretary of State as Document No. 200800006618364. (Aff. of Godfrey ¶ 29; Compl. ¶ 57 & Ex. H.)

## B.  The Defaults

The Notes are in default and are currently due and payable. (Aff. of Godfrey ¶ 10, 18–20.) The Rock Creek FLCA Note is in default for the failure of Rock Creek and Midwest to make all payments due and owing since March 1, 2009. (Compl. ¶ 87 & Ex. B; Rock Creek Answer ¶ 87; Aff. of Godfrey ¶ 10.) The Rock Creek PCA Note matured on December 1, 2009, and thus the full amount of principal plus any and all accrued interest is currently due. (Complaint ¶ 34 and Ex. C.) Furthermore, each of the Notes provides that an additional event of default occurs if Rock Creek and/or RCD default under one or more of the other Notes. (*See* Compl. Exs. B & C.) The failure to pay the Rock Creek PCA Note when it matured and came due triggered additional defaults under both Notes. (Compl. ¶¶ 34, 39–40.)

Defendants Rock Creek, Midwest, and Vreba-Hoff (collectively, the "Rock Creek Borrowers") have acknowledged these defaults. On or about September 9, 2009, the Rock Creek Borrowers entered into a Pre-Negotiation Agreement (the "Pre-Negotiation Agreement") with the Plaintiffs. (Compl. ¶ 67 & Ex. N; Rock Creek Answer ¶ 67; Aff. of Godfrey ¶ 35.) In the Pre-Negotiation Agreement, the Rock Creek Borrowers identify the documents governing their loan and acknowledge that the Notes and related loan documents were duly executed and delivered, that the Notes and related loan documents remained in full force and effect, that they

were in default under the Notes and that specific amounts were due and owing under each of the Notes as of August 31, 2009. (Compl. ¶¶ 67–69 & Ex. N; Rock Creek Answer ¶¶ 67–69; Aff. of Godfrey ¶ 36.) They also waived any right to trial by jury. (Compl. Ex. N.)

Pursuant to the defaults admitted by the Rock Creek Borrowers, as of August 31, 2009, PCA was due under the Rock Creek PCA Note an amount not less than $2,630,354.55 (including principal in the amount of $2,564,500.00, together with unpaid interest as of August 31, 2009, of $65,854.55) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including attorney's fees and court costs; (ii) continuing and accruing interest at the per annum rate of 5.5256%; and (iii) all other amounts and charges due and owing under the Rock Creek PCA Note. (Compl. ¶ 95; Aff. of Godfrey ¶¶ 17–18.) As of August 31, 2009, FLCA was due pursuant to the Rock Creek FLCA Note an amount not less than $6,885,080.92 (including principal in the amount of $6,663,404.28 and accrued and unpaid interest, including interest at the Default Add-On Rate, as of August 31, 2009, in the amount of $153,933.70) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including attorney's fees and court costs; (ii) continuing and accruing interest at the per annum rate of 7.5256%; and (iii) all other amounts and charges due and owing under the Rock Creek FLCA Note. (Compl. ¶ 89; Aff. of Godfrey ¶¶ 11–12.)

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party opposing the motion "may not rest upon the mere allegations or denials contained in their pleadings; instead, it is incumbent upon them to introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 675 (7th Cir. 2006).

Here, the Defendants have failed to respond to the Motion for Partial Summary Judgment and have thus failed to dispute the facts set forth in the moving parties' statement of material facts. Accordingly, the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy." N.D. Ind. L.R. 56.1(b).

## DISCUSSION

### A. Breach of Contract Claims, Counts One and Two

The Plaintiffs allege that the Rock Creek Borrowers have breached the terms of the Rock Creek FLCA Note (Count One) and the Rock Creek PCA Note (Count Two) by their failure to

make payments due and owing. To be successful on a breach of contract claim under Indiana law, the plaintiff must prove: (1) the existence of a contract; (2) breach by the defendant; and (3) damage or loss to the plaintiff. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind. Ct. App. 2000). The construction of a written contract is generally a question of law, and summary judgment is particularly appropriate because there are no issues of fact. *Kordick v. Merchants Nat'l Bank and Trust Co. of Indianapolis*, 496 N.E.2d 119, 125 (Ind. Ct. App. 1986).

Here, the relevant documents demonstrate that there is no issue regarding the Rock Creek Borrowers' obligations to the Plaintiffs under the Notes or their breach of those obligations. The Notes are valid and enforceable contracts. The Plaintiffs have performed their obligations under the contracts by advancing funds pursuant to the Notes. Mortgages encumber the Mortgaged Premises to the extent of the full amount due and owing under the Notes. On March 1, 2009, Rock Creek failed to make the monthly payment due under the Rock Creek FLCA Note, and it has missed every payment due thereafter. The Rock Creek PCA Note has matured and remains unpaid. Rock Creek and Midwest have been in breach of the Notes, and the entire loan balance for each is currently due and owing to the Plaintiffs. The Rock Creek Borrowers have already acknowledged their defaults under the Notes through the Pre-Negotiation Agreement. Thus, the Plaintiffs are entitled to summary judgment in their favor and against the Rock Creek Borrowers for the entire loan balance. As of August 31, 2009, the loan balance for the Rock Creek PCA Note is not less than $2,630,354.55 (including principal in the amount of $2,564,500.00, together with unpaid interest as of August 31, 2009 of $65,854.55) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including, attorneys' fees and court costs; and (ii) continuing and accruing interest at the per annum rate of 5.5256%. The loan balance due

pursuant to the Rock Creek FLCA Note is not less than $6,885,080.92 (including principal in the amount of $6,663,404.28 and accrued and unpaid interest, including interest at the Default Add-On Rate, as of August 31, 2009, in the amount of $153,933.70) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including attorneys' fees and court costs; and (ii) continuing and accruing interest at the per annum rate of 7.5256%.

**B.      Claim for Foreclosure, Count Four**

The Plaintiffs argue that they are entitled to summary judgment on their claim for foreclosure of all interests in the Mortgaged Premises, except to the extent that Defendant Shar Mechling, Wells County Treasurer, is due unpaid real estate taxes. The Rock Creek Borrowers have defaulted on the Notes, causing the conditions of the respective Mortgages to be broken and making the Mortgaged Premises subject to foreclosure. The Mortgages provide that if the Rock Creek Borrowers do not perform all of the conditions of the Notes and/or Mortgages, then the Plaintiffs are entitled to foreclose the liens on the Mortgaged Premises and have it sold pursuant to a foreclosure sale. In the Pre-Negotiations Agreement, the Rock Creek Borrowers acknowledged the right of the Plaintiffs to foreclose.

The Plaintiffs, in moving for partial summary judgment, acknowledge that their right to foreclose on the Mortgaged Premises is not without limitation. Defendant Mechling may possess a priority right to the proceeds of a sale of the Mortgaged Premises by virtue of unpaid real estate taxes on those premises. Accordingly, the Plaintiffs do not challenge the right of Defendant Mechling to be paid out of any sale proceeds prior to the Plaintiffs receiving payment. No other Defendant has answered to declare an interest in the Mortgaged Premises.

## C. Claim for Replevin of the Collateral, Count Five

The Plaintiffs submit that they are entitled to summary judgment on their claim for replevin of the collateral identified in the Rock Creek Security Agreements.

Under Indiana law, a claim for replevin is successful if the plaintiff proves "his right to title or possession, that the property is unlawfully detained, and that the defendant wrongfully holds possession thereof." *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004). The Plaintiffs have established a security interest in the collateral particularly described in the Rock Creek Security Agreements. *See* Ind. Code § 26-1-9.1-203–04. They perfected their security interests by filing UCC-1 Financing Statements on December 6, 2006, with the Indiana Secretary of State. On July 17, 2008, PCA filed an amendment to the Second Security Agreement with the Indiana Secretary of State. Pursuant to the Rock Creek Security Agreements, the Plaintiffs are entitled to recover possession of the collateral upon an event of default as defined in section 5 of the Security Agreements. Numerous defaults have occurred under the various loan documents, including the failure of the Rock Creek Borrowers to pay all sums due and owing under the Notes. A receiver has been appointed in this case, but the Order Appointing Receiver stated that it was "without prejudice to Plaintiffs' continued enforcement of the foreclosure and replevin action and execution on any order of possession in coordination with the Receiver or otherwise, by whatever means considered necessary to Plaintiffs." (Oct. 7, 2009, Order ¶ 45, DE 26.) The facts relevant to the Plaintiffs' action for replevin are undisputed, and the Plaintiffs are entitled to recover the collateral by judicial process or otherwise. Because this right extends only to the collateral as to which there is no dispute of ownership, and because Intervenor Defendant National City alleges that it holds a security

interest in some of the cattle that is present at the Andrews Dairy, the entry of summary judgment does not extend to that portion of the collateral to which National City has a right. Likewise, pursuant to the Stipulation of the Plaintiffs and Deere & Company, it does not extend to that portion of the collateral in which Deere & Company has a perfected first priority purchase money security interest.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Plaintiffs' Motion for Partial Summary Judgment [DE 77]. The Court, finding no just reason for delay, ORDERS:

1. That judgment be entered in favor of the Plaintiffs and against the Rock Creek Borrowers in the amount of the loan balances: as of August 31, 2009, PCA was due under the Rock Creek PCA Note an amount not less than $2,630,354.55 (including principal in the amount of $2,564,500.00, together with unpaid interest as of August 31, 2009, of $65,854.55) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including attorney's fees and court costs; (ii) continuing and accruing interest at the per annum rate of 5.5256%. As of August 31, 2009, FLCA was due pursuant to the Rock Creek FLCA Note an amount not less than $6,885,080.92 (including principal in the amount of $6,663,404.28 and accrued and unpaid interest, including interest at the Default Add-On Rate, as of August 31, 2009, in the amount of $153,933.70) plus: (i) all costs and charges incurred in the collection or enforcement thereof, including attorney's fees and court costs; and (ii) continuing and accruing interest at the per annum rate of 7.5256%.

2. That the Mortgages securing the amounts due and owing to the Plaintiffs are valid and

subsisting liens on the Mortgaged Premises, and are in first priority, save and except for the preservation of Defendant Shar Mechling, Wells CountyTreasurer, for unpaid real estate taxes; and that all other Defendants and all other parties are forever barred from asserting otherwise. Accordingly, the equity of redemption of all of the Defendants, and any and all persons claiming through them, is foreclosed; all liens on the Mortgaged Premises are to be marshaled with the priority as set forth herein; the Mortgaged Premises, and/or the Defendants' interests therein, are to be sold, according to law, free and clear of all claims and interests of the Defendants in this action or any other person; and after deducting the costs of the sale, the proceeds of the sale are to be applied to the payment of the liens in the order of their priority.

      3. That the Plaintiffs are to be awarded an Order of Permanent Possession over the Property subject to a resolution of Intervenor Defendant National City's purported interest in the collateral, and exclusive of the interests of Defendant Deere & Company as set forth in the Stipulation as to the Plaintiffs' Motion for Partial Summary Judgment [DE 84].

      SO ORDERED on April 30, 2010.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT